

**ENTERED**
**04/09/2008**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| IN RE: § | |
| ADAN LARA; aka ADAN LARA, SR.; aka § | CASE NO: 07-60188 |
| ADAM LARA, MARY H LARA; aka MARY § | |
| HORELKA LARA; aka MARY MARGARET § | |
| HORELKA LARA; aka MARY HORELKA § | |
| Debtor(s) § | |
| § | CHAPTER 13 |

**MEMORANDUM OPINION**
**CONCERNING OBJECTION TO CLAIM (doc # 29) and**
**OBJECTION TO PLAN CONFIRMATION (doc # 33)**

Debtors object to the proof of claim of Vanderbilt Mortgage and Finance, Inc. Vanderbilt, in turn objects to the value of its collateral that Debtors propose in their chapter 13 plan. After trial and supplemental briefing, the Court finds that the evidence is inadequate for decision on either the objection to claim or the confirmation of the plan.

## I.  FINDINGS OF FACT

Adan and Mary Lara ("Debtors") had purchased Lot 28, Garden Acres Subdivision, Victoria County, Texas (the "Real Property") prior to July, 2004. In that month, Debtors paid $46,000 for a mobile home. To purchase the mobile home, (and to pay for property insurance, land improvements, and closing and miscellaneous costs) Debtors borrowed $57,483.24 from Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt"). To evidence the promise to repay the borrowed funds, Debtors executed a Retail Installment Contract Security Agreement.[1] That document also created "a security interest in the mobile home under the applicable certificate of title law and the applicable Uniform Commercial Code. "To further secure" the repayment of the indebtedness, Debtors separately gave Vanderbilt a Deed of Trust that encumbered the Real Property.[2]

Debtors located the mobile home on the Real Property, supported it with cinder blocks, tied it down with straps, and removed the wheels. Debtors filed the relevant and definitive Texas Statement of Ownership and Location of Personal Property declaring that the manufactured home is personal property.[3]

---

[1] Debtor Exhibit 2.

[2] The Retail Installment Contract includes a "promise to pay" and a security interest in the mobile home to secure that promise to pay. The Deed of Trust states that it is a lien "to secure payment of the Retail Installment Contract." Therefore, there is one debt, the promise to pay in the Retail Installment Contract secured by (i) a security interest in the mobile home, and (ii) a deed of trust in land.

[3] Debtors' Exhibit 4.

On December 18, 2007, Debtors filed a voluntary bankruptcy petition commencing this case under chapter 13 of the Bankruptcy Code. Vanderbilt filed a proof of claim for $50,514.44. The proof of claim asserts that the entire claim is a secured by

> "Real Estate"
> "Other: Mobile Home."

Debtor filed a chapter 13 plan[4] that proposes to pay Vanderbilt $595.83 per month for 60 months, a total of about $35,750.00, without interest. Debtor's plan asserts that Vanderbilt's claim is secured by "Homestead & 2002 Redman Champion Double Wide."

The *NADA Valuation Report*, Debtors' Exhibit 5, establishes the value of the mobile home at $31,725. While that evidence is not overwhelming, it is the only credible evidence of value.

## II.   ISSUES POSTURED FOR DECISION

Debtor filed an objection to Vanderbilt's claim, docket # 29. The objection states "Debtors object to the value listed by Vanderbilt on its proof of claim."[5] Vanderbilt responded that its claim is secured by "Debtors' manufactured home and land…"

Vanderbilt filed an objection to confirmation of the plan, docket # 33. Vanderbilt asserts that "Because VANDERBILT has a security interest in both the home and land, a cram down is not appropriate. Rather, VANDERBILT must be paid in full the amount owed."

## III.   CONCLUSIONS OF LAW

A.   Relevant Law

   1.   Bankruptcy Code § 506(a)(1)

Under Bankruptcy Code § 506(a)(1), a creditor with collateral is treated as a secured creditor to the extent of the value of the collateral and is treated as an unsecured creditor to the extent that the amount of the claim exceeds the value of the collateral.

   2.   Bankruptcy Code § 1322(b)(2)

Bankruptcy Code § 1322(b)(2), in combination with § 506(a) and § 1325(a)(5)(B)[6], authorize a chapter 13 debtor, through a chapter 13 plan, to modify the rights of a secured creditor by paying only the present value of the creditor's collateral.[7] Debtors seek to take

---

[4] Docket # 38.
[5] The other objection has been resolved by amendment of the proof of claim.
[6] And especially § 1325(a)(5)(B)(ii).
[7] The balance of the claim, (*i.e.* the amount by which the entire claim exceeds the value of the collateral) would be treated as an unsecured claim and paid the same percentage as other unsecured creditors, if unsecured creditors receive any payment.

advantage of this provision of the Bankruptcy Code by proposing a plan that would pay Vanderbilt only the value of the collateral securing the loan. In common parlance, this is "cramdown" or "lien stripping."[8]

Although a debtor can "lien strip" almost all secured claims, Bankruptcy Code § 1322(b)(2) prohibits lien stripping of a claim that is

> "secured <u>only</u> by a security interest in <u>real property</u> that is the debtor's principal residence …"
> 11 U.S.C. § 1322(b). (Emphasis supplied.)

Whether property is real property is determined by state law; "property interests are created and defined by state law." *Nobelman*, 508 U.S. at 329 (citing *Butner v. United States*, 440 U.S. 48, 54-55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)).

   3.   Texas Property Code § 2.001

Generally a manufactured home is personal property in Texas, but it can be real property if two conditions are met. The Texas Property Code provides:

> (a) Except as provided by Subsection (b), a manufactured home is personal property.
>
> (b) A manufactured home is real property if:
>   (1) the statement of ownership and location for the home issued under Section 1201.207, Occupations Code, reflects that the owner has elected to treat the home as real property; and
>   (2) a certified copy of the statement of ownership and location has been filed in the real property records in the county in which the home is located.
> V.T.C.A., Property Code § 2.001.

In this case, the Statement of Ownership states that the mobile home is personal property and there is no evidence that any statement was recorded. Therefore, the mobile home at issue in this case is personal property under Texas law.

B.   Vanderbilt Holds a Security Interest in Real Property and in Personalty

Vanderbilt has a deed of trust on land which is real property.

---

[8] "Cramdown" is sometimes used colloquially to refer to the operation of §§ 1322(b)(2) and 1325(a)(5)(B) as described above. That term, however, should be used to refer to confirmation of a plan, usually a chapter 11 plan, over a secured creditor's objection. "Lien stripping" is a better term for chapter 13 treatment of part of a secured creditor's claim as unsecured when the value of the collateral is less than the amount of the debt.

However, Vanderbilt also has a security interest in Debtors' mobile home. Although the mobile home is Debtors' residence, the manufactured home is not real property: Texas Property Code § 2.001.

The special treatment that Congress provides residential lenders in § 1322(b)(2) does not apply unless the claim is secured <u>only by</u> real property that is the debtor's residence. Since Vanderbilt holds a Note secured both by real property and by personalty, the exception does not apply to Vanderbilt's claim. When the exception does not apply, the general rule of §§ 506(a), 1322(b)(2), and 1325(a)(5)(B) apply.

Vanderbilt cites *Nobelman v. American Sav. Bank*, 508 U.S. 324 (1993), for the proposition that lien stripping is not authorized with respect to a claim secured by a debtor's residence. That is much too broad an interpretation of *Nobelman*. That case resolves a conflict in the circuits over whether § 506(a) trumps the § 1322(b)(2) limitation or *vice versa*. To reach its decision, the Supreme Court focused on statutory language authorizing modification of the "rights" of a creditor. In *Nobelman* the creditor's collateral was solely real property, but the claim exceeded the value of the collateral. The Supreme Court held that if the creditor was within the § 1322(b)(2) exception (*i.e.* a creditor who held a claim that was secured only by a security interest in real property that was the debtor's principal residence) then the "rights" of that creditor (whether those rights were secured or unsecured) could not be modified by the plan. Thus, even though § 506 classified some of the creditor's rights as unsecured, <u>none</u> of the creditors rights could be affected since the creditor was within the defined exception.

In this case, Vanderbilt is not within the exception in the second phrase of §1322(b)(2). Vanderbilt is not a holder of a claim that is secured <u>only</u> by a security interest in <u>real property</u> that is the debtor's residence. In this case, the residence is personalty. Vanderbilt holds a claim that is secured by personalty that is Debtors' residence, albeit that claim is also secured by lien on real property on which the personalty is located. Since Vanderbilt is not within the exception of the second phrase of § 1322(b)(2), under the logic of *Nobleman* Vanderbilt's rights as a holder of a secured claim can be modified under authority of the first phrase in §1322(b)(2).

C.  Jurisprudence and Treatise Analysis

The parties have cited the Court to no dispositive authority on point.

The Third Circuit holds that a mortgagee who wishes to avoid bifurcation of its claim on a residential mortgage must limit its lien to the real estate. *In re Hammond*, 27 F.3d 52 (3d Cir. 1994). *Hammond* upheld a debtor's right to modify the rights of a mortgagee who also held a security interest on any and all appliances, machinery, furniture and equipment (whether fixtures or not). Congress may have changed that result in BAPCPA[9] in 2005 by defining "debtor's principal residence" to include "incidental property." Bankruptcy Code § 101(13A).

The First Circuit upheld a debtor's right to modify the rights of a creditor where the debtor resided in a multi-family house in which one unit is the debtor's principal residence and

---

[9] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) (codified as amended at 11 U.S.C. §§ 101-1532).

the security interest extends to the other income-producing units.  *Lomas Mortg., Inc. v. Louis*, 82 F.3d 1 (1st Cir. 1996).  See also, *In re Scarborough*, 461 F.3d 406 (3d Cir. 2006).  BAPCPA may have also changed that result with the definition of "debtor's principal residence."

     In fact, the jurisprudence is rife with attempts to address the issue of whether inclusion of incidental personalty destroyed the special treatment available to residential real property lenders.

> *In re Johns*, 37 F.3d 1021 (3d Cir. 1994); *In re Hammond*, 27 F.3d 52 (3d Cir. 1994), (mortgage that includes a security interest in "appliances, machinery, furniture and equipment (whether fixtures or not)" is not within the scope of § 1322(b)(2)); *Sapos v. Provident Inst. of Sav. in Town of Boston*, 967 F.2d 918 (3d Cir. 1992) (disapproved of by, *In re French*, 174 B.R. 1 (Bankr. D. Mass. 1994)) (mortgage that includes "household appliances which are, and shall be deemed fixtures and a part of the realty … namely wall-to-wall carpeting," rents, and profits is secured by personal property). The antimodification provision of § 1322(b)(2) is not applicable); *In re Loper*, 222 B.R. 431 (D. Vt. 1998); *In re Cummings*, 214 B.R. 126 (D.N.J. 1997) (lien in appliances and in rents, profits, and improvements takes mortgage out of scope of § 1322(b)(2)); *Lutz v. Miami Valley Bank*, 192 B.R. 107 (W.D. Pa. 1995) (mortgage secured by rents, issues, and profits could be modified); *Davis v. Dovenmuehle Mortg., Inc.*, 1994 WL 700248 (N.D. Ill. 1994) (mortgage secured by personal insurance proceeds, fixtures and rents was not within § 1322(b)(2)); *In re Reed*, 247 B.R. 618 (Bankr. E.D. Pa. 2000) (security interest in escrow payments for taxes and insurance excepts mortgage from the scope of § 1322(b)(2)); *In re Barsky*, 210 B.R. 683 (Bankr. E.D. Pa. 1997) (abrogated on other grounds by, *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 118 S. Ct. 1408, 140 L. Ed. 2d 566 (1998)) (security interest in "rents and profits" takes a mortgage out of the protection of § 1322(b)(2)); *In re Barrett*, 188 B.R. 285 (Bankr. D. Or. 1995) (security interest in livestock in addition to farm precludes application of § 1322(b)(2); *In re Bernhardt*, 186 B.R. 889 (Bankr. E.D. Pa. 1995) (security in range/oven, rents, issues, and profits outside scope of § 1322(b)(2)); *In re Boulan*, 1995 WL 358172 (Bankr. D. Idaho 1995) (security interest in household goods and sports equipment eliminates application of § 1322(b)(2)); *In re Escue*, 184 B.R. 287 (Bankr. M.D. Tenn. 1995) (security interest in all heating, plumbing, lights, water heaters, cooking, refrigerating, ventilating, and air conditioning equipment beyond scope of § 1322(b)(2)); *Hutchins v. Commonwealth Mortg. Corp.*, 165 B.R. 401 (E.D. Pa. 1994); *In re Laws*, 163 B.R. 449 (E.D. Pa. 1994) (all holding same as *Hammond*); *SECOR Bank, Federal Sav. Bank v. Dunlap*, 129 B.R. 463 (E.D. La. 1991) (§

1322(b)(2) does not prohibit modification of a mortgage that contains a security interest in "'all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures' as well as in all funds escrowed for payment of taxes and insurance"); *In re Heckman*, 165 B.R. 16 (Bankr. E.D. Pa. 1994), (security interest in rents takes a mortgage out of § 1322(b)(2) in light of *Sapos*); *In re Kelly*, 150 B.R. 121 (Bankr. M.D. Pa. 1992) (security interest taken in "rents, royalties, mineral, oil and gas rights and profits, water rights and all fixtures now and hereafter part of the property" puts mortgage out of § 1322(b)(2)); *Matter of Graham*, 144 B.R. 80 (Bankr. N.D. Ind. 1992) (presence of dragnet or cross-collateralization clauses takes mortgage out of scope of § 1322(b)(2)); *In re Taras*, 136 B.R. 941 (Bankr. E.D. Pa. 1992) (security interest taken in "rents, issues, and profits" takes mortgage out of scope of § 1322); *In re Jackson*, 136 B.R. 797 (Bankr. N.D. Ill. 1992) (assignment of rents and profits eliminates application of § 1322(b)(2)); *In re Cole*, 122 B.R. 943 (Bankr. E.D. Pa. 1991); *In re Dent*, 130 B.R. 623 (Bankr. S.D. Ga. 1991), (distinguishing *In re Wright*, 128 B.R. 838 (Bankr. N.D. Ga. 1991), security interest in monthly escrow payments for taxes and insurance forfeited protection under § 1322(b)(2). "In this case, the addendum to the deed to secured debt granted a present security interest in the escrow payments … not contingent upon default … The escrow account is not an incorporeal hereditament which is part of the possessory bundle of rights known as seizin in property … While the obligation to pay taxes may exist from the ownership of real property, it is not a possessory right. The obligation to maintain property insurance is a covenant … a contractual obligation between the debtor and the lender. The cash escrow payments are separate and distinct from the real property. Therefore, the taking of a security interest in … the escrow payments, removed … the limitation of § 1322(b)(2)."); *In re Klein*, 106 B.R. 396 (Bankr. E.D. Pa. 1989) (security interest in hazard insurance proceeds and personalty supplying heating renders § 1322(b)(2) inapplicable); *In re Kessler*, 99 B.R. 635 (Bankr. E.D. Pa. 1989) ("plumbing, cooking, hearing [sic], lighting fixtures, appliances" forfeits the protection of § 1322(b)(2)); *In re Jakes*, 99 B.R. 393 (Bankr. M.D. Tenn. 1989) (mortgage holder not protected from modification by § 1322(b)(2) where deed of trust establishes a lien "on all improvements and fixtures … and the proceeds from the sale of any such fixtures"); *In re Bender*, 86 B.R. 809 (Bankr. E.D. Pa. 1988) (boilerplate in security agreement that includes security interest in "appliances, machinery, furniture and equipment" creates security interest in both real and personal property, and § 1322(b)(2) does not prevent modification); *In re*

> *Caster*, 77 B.R. 8 (Bankr. E.D. Pa. 1987) (FHA mortgage instrument which includes "appliances" is not protected from modification by § 1322(b)(2)); *In re Crompton*, 73 B.R. 800 (Bankr. E.D. Pa. 1987); *In re Ford*, 84 B.R. 40 (Bankr. E.D. Pa. 1988) (in dicta, security interest in reversions, remainders, rents, issues, profits and a reference to "lighting fixtures or machinery" would take loan outside protection of § 1322(b)(2)); *In re Reeves*, 65 B.R. 898 (N.D. Ill. 1986) (home improvement lender with security interest in debtor's principal residence and in "fixtures" is not entitled to protection of § 1322(b)(2) because not all fixtures are so attached to real estate that they constitute part of debtor's principal residence).
> 7 Norton Bankr. L. & Prac. 3d § 149:7 n39 (Westlaw 2008).

Norton notes that Congress' attempt to resolve this has been less than clear:

> Congress sought to expand the protections afforded to mobile homes in the passage of the 2005 Amendments. In so doing, however, it may have missed the mark. The 2005 Amendments amended the definitions section, Code § 101(13A), and included in the definition of a "debtor's principal residence" a "mobile or manufactured home or trailer." To be subject to the protections of § 1322(b)(2), however, the claim must be secured by a "security interest in real property that is the debtor's principal residence." Thus even for cases filed after the effective date of the 2005 Amendments, it appears that the dispositive question remains whether the mobile home has become part of the real property under applicable state law.

This Court previously addressed the new definitions and reached the same conclusion:

> The phrase "that is the debtor's principal residence" modifies "real property," not the other way around. One turns grammar on its head if one treats redefinition of a limiting dependent phrase as totally eliminating the words to which it is dependent. What the sentence says is that a plan may modify claims that are secured by real property that is the debtor's principal residence. Even though "debtor's principal residence" may include personalty, the reference to "debtor's principal residence" is a *limiting* clause. Expanding or contracting the limiting clause does not eliminate the words that it limits.
>
> While the Court does not know what Congress had in mind when it defined "debtor's principal residence," the limitation of § 1322(b)(2) to real property has been clear and has governed chapter 13 cases for over 27 years. The Court finds it implausible

> that Congress simply "forgot" to delete the word "real" from § 1322(b)(2), thereby requiring the courts to speculate on the purpose of the new definition.
>
> Collier's agrees:
>
> This result is not changed by the definition of "debtor's principal residence" added to section 101 by the 2005 amendments. Although that definition includes an individual condominium or cooperative unit, as well as a mobile or manufactured home, or a trailer, the fact that such residences are personal property means that a debt secured by them would not be secured solely by real property that is the debtor's principal residence. Only if a mobile home or cooperative is real property under applicable nonbankruptcy law would the limitations on modification apply, even though the mobile home or cooperative is considered the debtor's principal residence. 8 Collier on Bankruptcy ¶ 1322.06[1][a] (15th ed. rev.).
>
> Perhaps Congress had in mind avoiding any ambiguity if personal property attached to realty and thereby became part of the realty. But speculation is unwarranted. Section 1322(b)(2) is very clear and has been very clearly interpreted for a very long time. It only applies to a claim secured by real property. If Congress had meant to say "the plan may modify the rights of holders of secured claims other than a claim secured only by the debtor's personal residence ...," that would have been incredibly easy to do. But Congress did not do that.

*In re Cox*, Case No. 07-60073, Slip Copy, 2007 WL 1888186 *2 (Bankr. S.D. Tex. June 29, 2007).

## IV.   EVIDENCE IS INADEQUATE

The evidence is inadequate to sustain plan confirmation, to sustain the objection to claim, or to sustain the objection to confirmation. The amount of the claim is established in the proof of claim to which there has been no objection except with respect to whether the rights of the creditor can be modified. Therefore, the total amount of the claim is about $50,514.44. The lien can be stripped from the collateral (*i.e.* the rights of the secured creditor can be modified) but only to the extent that the amount of the claim exceeds the value of the collateral.

The value of the mobile home is $31,725. There is no evidence concerning the value of the land. Debtor can strip the lien to the extent that the value of the mobile home plus the value of the land is less than $50,514.44. Said otherwise, the rights of the secured creditor can be modified if the value of the land is less than $18,789.44.[10] The Debtors' plan must propose

---

[10] $18,789.44 +31,725.00=$50,514.44 (the amount of the claim).

payments that would provide Vanderbilt the <u>present value</u> of the combined value of the mobile home and the land.  Although the parties have not discussed the applicable interest rate, payments of $35,750 (which Debtors' current plan proposes) would only provide only about 4.5% interest.  That may or may not be the correct amount of interest.

       The Court will announce this decision at the continued hearing and determine the appropriate proceedings to value the land if that is necessary.

       SIGNED 04/08/2008.

*Wesley W. Steen*
Wesley W. Steen
United States Bankruptcy Judge